Filed 02/26/24

VERMONT SUPERIOR COURT
Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-04339

Eve Fournier et al v. Rainey Wood et al

## FINDINGS, CONCLUSIONS, AND JUDGMENT

This is an ejectment action between Plaintiffs Eve and Dan Fournier and Defendants Rainey Wood and Katie Lucas.[1]  It concerns the lease for a parcel of land that Defendants Wood and Lucas have used to occupy and possess with their mobile home.  The matter came before the Court for a bench trial on February 16, 2024.

Based on the evidence and testimony, the Court finds the following.  The Fourniers own a parcel of land located at 417 Lawson Ridge in Coventry, Vermont.  The land extends several acres and has additional frontage on Alderbrook Road.  In 2011, the Fourniers entered into an oral agreement with Mr. Wood to lease a portion of the Fourniers' land along the Alderbrook Road frontage.  In exchange, Mr. Wood agreed to pay the Fourniers $200 per month, As a further part of the agreement, the Fourniers agreed to allow Mr. Wood to bring his mobile home to the site and connect to the sewage and water on the property.  These terms are undisputed by the parties.  Ms. Fournier also testified that she had added the following conditions to the parties' agreement: (1) she did not "want to chase him for money"; (2) no outdoor fires; (3) no cars squealing; and (4) no driving ATVs or bikes along the powerline right of way as she did not want people to think that the right of way was open to the public.

While Ms. Fournier characterized these as conditions of the lease, the evidence suggests that they were more guidelines.  There is the undisputed testimony that the parties largely got along for the

---

[1] Ms. Lucas was not a party to the original oral lease agreement, and there was no evidence that she was ever added as a party to the lease agreement.  Ms. Lucas involvement in the present matter arises from the fact that she is residing at the property with Mr. Wood and may have an interest in the mobile home.  This makes Ms. Lucas a necessary party to the present ejectment action, but it does not appear that her interest or any rights she may have in the land vary from Mr. Wood.  Given that Ms. Lucas was neither a party to the lease was largely not a primary point of contact during the tenancy with Plaintiffs, her interests do not appear to differ from Mr. Woods.  For the purpose of simplicity, the Court will focus on Mr. Wood's dealings with Plaintiffs with the understanding that the findings and conclusions apply equally to Ms. Lucas.

first ten years of the lease relationship, which does not square with Ms. Fournier's contention that Mr. Wood began violating the "terms" of his lease from the beginning. Instead, the Court finds that the agreement between the parties was more basic and straightforward. The Fourniers gave Mr. Wood permission to use and occupy a portion of their land along Alderbrook Road, including septic and water hook-up, and in exchange Mr. Wood paid them rent equivalent to $200 per month.

There was also conflicting testimony about the length and term of the lease. Mr. Wood testified that he understood the agreement to be an annual lease that would automatically be renewed each year unless formal notice of cancellation was tendered 90 days in advance. Ms. Fournier testified that she always understood the lease to be a month-to-month agreement. The confusion appears to arise from two general sources.

First, Mr. Wood paid his rent in annual or semi-annual installments, rather than on a month-to-month basis, but Ms. Fournier credibly testified that this was an accommodation to Mr. Wood that she allowed to reduce the risk that he would fall behind on monthly rent payments. Given Ms. Fournier's credible testimony, the Court does not find that the payment schedule is evidence of any agreement or practice that would alter the terms of the lease.

Second, Mr. Wood has lived so long at the property that the relationship is best described in terms of years, not months. As with the rent payment schedules, this perception does not alter the basis of the parties' bargain, but it does explain some of the reasons why Mr. Wood came to understand and think of the relationship on annual, rather than monthly terms. Additionally, the parties seem to have been acutely aware that their relationship was one of landlord and tenant, and there is no allegation that Mr. Wood sought or was given any additional rights or interest in the property.

The parties agree that the relationship began to sour in 2020. At that time, the Fourniers indicated that they did not want to be landlords any longer and did not want Mr. Wood on the property. This led to a series of disputes between the parties and efforts by the Fourniers to terminate Mr. Wood's lease. As part of these efforts, the Fourniers sent a letter to Mr. Wood in September 2022 notifying him that they were increasing the rent as of December 1, 2022 from $200 per month to $500 per month. There is no evidence that Mr. Wood received notice of this increase, but there is evidence that Mr. Wood began blocking communications with the Fourniers and refusing certified letters.

The parties' dispute continued to escalate during this time, and Mr. Wood and the Fourniers took out competing no trespass orders against each other. Subsequent efforts by the Fourniers to send

certified mailings to Mr. Wood have been returned as "Refused." Mr. Wood claims that he has not received any of these letters, but the Court does not find this denial credible. The Fourniers have sent several notices to Mr. Wood by first class mail to the 473 Alderbrook Road address, which have not been returned to them. At trial, Mr. Wood admitted that 473 Alderbrook Road is his primary mailing address and where he regularly receives mail. When asked about this discrepancy, Mr. Wood equivocated about his initial denial and admitted that he might have received the notices, but he stated that he had no memory of having received them.

On June 27, 2023, the Fourniers, through current counsel sent two notices to quit. The first cited non-payment of rent and terminated the tenancy effective July 17, 2023. The second, dated the same day, notified Mr. Wood that his lease was terminating effective October 1, 2023 for no cause. Both notices cited to 9 V.S.A. § 4467. The Fourniers sent both notices by certified mail and also first-class mail. Both sets of notices, the certified and first-class mailing, were sent to the 473 Alderbrook Road address, The certified mailings were refused and returned to the Fourniers unopened. The first-class mailings were not returned.

In September 2023, Mr. Wood presented the Fourniers with a check for $4,800, which he claimed would satisfy his unpaid back rent from September 2022 through September 2023. This amount also included what Mr. Wood labelled as rent from September 2023 to September 2024. The Fourniers refused this check. In October 2023, Mr. Wood did not vacate, and the Fourniers filed the present action.

## Legal Analysis

As a preliminary matter, there is some discrepancy about the nature of the parties' lease and what law applies. While the parties have proceeded under the Vermont Residential Act, that law also does not appear to apply to the parties' lease. 9 V.S.A. § 4451. The Vermont Residential Rental Act applies all "rental agreements," and its obligations are imposed on "landlords" and "tenants. 9 V.S.A. § 4453. These three terms, however, are defined to limit their application to agreements and relationships where the parties are agreeing to a lease of a "dwelling unit. 9 V.S.A. § 4451(8) ("rental agreement" is defined to mean an agreement, written or oral, "concerning the use and occupancy of **a dwelling unit** and premises."); 9 V.S.A. § 4451(4) ("landlord" is defined as "the owner, lessor, or where applicable, the sublessor of **a residential dwelling unit**); 9 V.S.A. § 4451(10) ("tenant" is defined to mean "a person entitled under a rental agreement to **occupy a residential dwelling unit**")

(emphasis added). The term "dwelling unit" is defined to mean "the part of a building used as a home, residence, or sleeping place . . ." 9 V.S.A. § 4451(3).

Given that Mr. Wood brought his own dwelling place to the site, the subject of the parties' lease solely concerns the renting of land with limited septic and water services. Under the plain language of the statute, the parties' agreement was not a "rental agreement" as that term is defined in the Vermont Residential Rental Act. The Fourniers are also not "landlords," and Mr. Wood is not a "tenant" as those terms are used and defined under the Vermont Residential Rental Act. Therefore, the provisions of the Vermont Residential Rental Act are not applicable to the parties or to their lease, and neither the Fourniers, nor Mr. Wood are bound to the specific statutory terms and obligations of the Act, including but not limited to the requirements of notice and termination under 9 V.S.A. § 4467. 9 V.S.A. § 4453. While the Fourniers appear to have complied with these provisions, the parties' agreement and compliance cannot be analyzed or enforced under this Act as it does not apply.

The Court has also examined whether the parties' relationship is governed by the Vermont Mobile Home Act. Given that the Fourniers do not operate a mobile home park as that term is defined, the statutes applying to ejectment actions with mobile homes under the Act do not apply to the present action. 10 V.S.A. § 6201 (defining "mobile home park" to mean a parcel where two or more lots are rented for mobile home use and occupancy) and 10 V.S.A. § 6237 (applying to evictions of leaseholders in mobile home parks).

The Court will further note that the agreement between the parties was oral, and under Vermont law, a party seeking to enforce an agreement that lasts for one year or more must put that agreement in writing. 12 V.S.A. § 181. As an oral agreement for an extended lease, the parties have not established the necessary writing, on which the Court can base either the enforcement or denial of specific terms and provisions. Id.; see also 27 V.S.A. § 302 (requiring long-term leases to be recorded in the land records to be enforceable against third-parties). As the testimony at the hearing showed, the parties have contradictory memories about what was discussed, what was agreed upon, and even what happened during those early years.

Given that neither the Residential Rental Act, the ejectment provisions of the Vermont Mobile Home Act, or even certain provisions of contract law do not apply to the present matter, the Court must look to the common law for the framework in which to evaluate the parties' lease for land and to define the parties' relationship and rights. In this respect, the Court recognizes that the parties' actions created a lease and a landlord/tenant relationship. Mr. Wood leased land from the Fourniers and had a

right to occupy those lands with his mobile home residence.  In return, the Fourniers let Mr. Wood occupy the land and received rental payments equaling to $200 per month, which were paid at regular intervals.

The uncontested evidence shows that the parties had a working tenancy for over ten years, and that each side was sufficiently satisfied with the relationship for it to continue.  The question is what type of tenancy.  The answer is a common law tenancy at will.  *Toussaint v. Stone*¸ 116 Vt. 425, 428 (1951) ("The agreement being oral, it created a tenancy at will . . . .").  As the Vermont Supreme Court has described it:

> A tenancy at will may, as the definition implies, be terminated at any time by either the landlord or tenant.  It can be terminated by any act or declaration inconsistent with the voluntary relationship of landlord and tenant, as notice to quit, threat of legal means to recover possession, anything that amounts to demand of possession, the bringing of an action to recover possession which fails.

Id. at 428–29.

As a tenancy at will, the Fourniers did not need to give the same levels of notice as required under 9 V.S.A. § 4467.  The fact that they did means that they have provided more than sufficient notice as *Toussaint* explains, termination may be effectuated by any number of means including oral statements or the filing of a lawsuit to recover possession.  Termination of a tenancy at will also does not require either a particular reason, a substantial notice timeframe, or "actual notice" as that term is defined under 9 V.S.A. § 4451(1).

In this respect, the Fourniers have more than met the necessary burden of establishing that they properly terminated the parties' tenancy-at-will.  The Fourniers have more than an adequate illustrated that they no longer wish to be in a rental relationship with Mr. Wood, and as noted in *Toussaint*, that is sufficient to give rise to a cause for ejectment.  116 Vt. at 428–29.

Based on this and the evidence of termination, the Court concludes that the Fourniers properly terminated their land-lease with Mr. Rainey, and they are entitled to be restored to possession of their property.

This leaves two questions.  First, is when and how the tenancy shall end.  The second is what amount of unpaid rent is due.

Under *Toussaint*, the Vermont Supreme Court notes that even an at-will defendant is "entitled to a reasonable time after the termination of the tenancy in which to procure other accommodations

and remove his property." Id. at 429. In this case, while the termination process has been pending for several years, there has been sufficient confusion about the legal status and relationship of the parties. The parties have been involved in a prolonged process that has found Plaintiffs struggling to serve what they understood to be proper notice, and there is substantial evidence that Defendant has sought to avoid service and prolong the process. In this respect, there is some indication that Defendant had reasonable notice that his tenancy was coming to an end, but there was sufficient confusion such that the Court deems it proper and necessary to allow Defendant a reasonable amount of time to remove his mobile home and possessions beyond the date of this Judgment. At trial, Defendant Rainey sought six months. Plaintiffs objected claiming that such additional time was excessive.

The Court agrees that six additional months are excessive, and it will instead look to the weather conditions. This decision will be issued at the end of February and on the cusp of winter's transition to spring and mud season. The Court finds it reasonable to allow Defendant the equivalent of season to find a new site and secure the removal of the mobile home. Therefore, the Court will give Defendant until 9am on May 31, 2024 to remove the mobile home and their personal property from the Fourniers' property. The Court will direct the Court Clerk to issue a writ of possession concurrent to and consistent with this decision.

In order to ensure that Plaintiffs continue to receive rent, the Court shall keep the Rent Escrow Order in this matter in effect until May 31, 2024. The terms of the Rent Escrow Order remain as before, and a failure to make any further escrow payments shall result in a right for Plaintiffs to seek an immediate writ of possession consistent with 12 V.S.A. § 4853a(h).

Finally, the Court finds that the rate of rent between the parties has been and remains $200 per month. The Court finds that Defendant Wood had not paid rent since August of 2022. Therefore, Plaintiffs are entitled to $2,400 in rental payments representing unpaid rent for the period from September 2022 to September 2023. Plaintiffs are also entitled to all rent escrow funds paid to date and expected in the next three months. The Court shall disburse all rental payments made to date.

## ORDER

The Court grants judgment to Plaintiffs Eve and Daniel Fournier against Defendants Rainey Wood and Kate Lucas for possession of the real property located at 473 Alderbrook Road in Coventry, Vermont. Defendants are ordered to pay Plaintiffs $2,400 in damages, and a writ of possession shall

be issued consistent with this Decision to be executed no earlier than 9am, May 31, 2024. The Rent Escrow Order shall remain in effect until the writ of possession is executed. Finally, all rent escrow funds held to date shall be released to Plaintiffs concurrent with this Order.

Electronically signed on 2/21/2024 5:49 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge